UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

YOE RODRIGUEZ-MENDEZ, *on behalf of himself, FLSA Collective Plaintiffs and the Class*,

                    Plaintiff,

          v.

VILLAGE SUPER MARKET, INC., *et al.*,

                   Defendants.

------------------------------------------------------------------------ x

Docket No.: 21-cv-08671(JMF)

## MEMORANDUM OF LAW ON BEHALF OF
## DEFENDANTS WAKEFERN FOOD CORP. AND SHOPRITE SUPERMARKETS, INC.
## <u>IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

Dated:  New York, New York
       February 16, 2022

Aaron Warshaw
Jamie Haar
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
599 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 492-2500
aaron.warshaw@ogletree.com
jamie.haar@ogletree.com

Mark Diana (*pro hac vice*)
10 Madison Avenue, Suite 400
Morristown, NJ 07960
973-630-2302
mark.diana@ogletree.com

*Attorneys for Defendants*
*Wakefern Food Corp. and Shoprite Supermarkets, Inc.*

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    STATEMENT OF FACTS ........................................................................ 2

       A.    The Wakefern  Cooperative ........................................................ 2

       B.    Wakefern's Payroll Services ...................................................... 4

       C.    Wakefern Discovered Inadvertent Payroll Errors ...................... 4

       D.    Plaintiff's Employment With Village ........................................ 5

       E.    Plaintiff's Individual Allegations .............................................. 6

       F.    Plaintiff's Class Allegations ..................................................... 6

III.   PROCEDURAL HISTORY .................................................................... 7

IV.    LEGAL ARGUMENTS ......................................................................... 7

POINT I     The Court Must Dismiss All Claims That Plaintiff
            Lacks Standing to Bring ............................................................. 7

       A.    Plaintiff Lacks Standing to Bring Individual or Class State Law
             Claims Against Any Defendants, Including the Wakefern Defendants,
             Pursuant to New Jersey, Pennsylvania, Connecticut, Delaware, and
             Maryland Law ............................................................................ 8

       B.    Plaintiff Lacks Standing to Bring Individual or Class FLSA or State Law
             Claims Against Companies By Whom He Was Not Employed,
             Including the Wakefern Defendants .......................................... 9

POINT II    The Court Does Not Possess Personal Jurisdiction  Over FLSA
             Claims by Out-of-State Plaintiffs Against Out-of-State Defendants ................. 11

       A.    The Personal Jurisdiction Standard Under the FLSA ........................... 12

       B.    The Court Must Dismiss All FLSA Claims on Behalf of Out-of-State
             Plaintiffs Against Out-of-State "John Doe" Defendants ..................... 14

POINT III   Plaintiff's Single Enterprise/Joint Employer Allegations Do Not Cure His
             Failure to Name Proper Plaintiffs and Defendants ............................... 15

       A.    Plaintiff's Amended Complaint Does Not Allege Facts to Plausibly
             Suggest that Wakefern and its Members are Either "Joint Employers" or
             a "Single Integrated Enterprise" ......................................................... 16

i

B.     Plaintiff's Single Enterprise/Joint Employer Allegations
Do Not Obviate Plaintiff's Need to Name Proper Plaintiffs
and Defendants.................................................................................................. 23

V.     CONCLUSION............................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................15

*Baughman v. KTH Parts Indus., Inc.*,
  No. 19-CV-8, 2020 WL 1853207 (S.D. Ohio Apr. 13, 2020) .................................24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................15, 16

*Benzinger v. Lukoil Pan Ams., LLC*,
  447 F. Supp. 3d 99 (S.D.N.Y. 2020)........................................................................17

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007).....................................................................................13

*Bojaj v. Moro Food Corp.*,
  No. 13-CV-9202, 2014 WL 6055771 (S.D.N.Y. Nov. 13, 2014)........................9, 23

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*,
  137 S.Ct. 1773 (2017)...........................................................................................13, 14

*Bynog v. Cipriani Grp., Inc.*,
  1 N.Y.3d 193, 770 N.Y.S.2d 692 (2003) ..............................................................17, 19

*Canady v. Anthem Cos.*,
  9 F.4th 392 (6th Cir. 2021) ......................................................................................14

*Cent. States Se. & Se. Areas Pension Fun v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) ...................................................................................24

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018).......................................................................................12

*Cho v. Osaka Zen Spa*,
  19-CV-7935(ER), 2021 WL 1736813 (S.D.N.Y. 2021).........................................23

*Contant v. Bank of Am. Corp.*,
  385 F. Supp. 3d 284 (S.D.N.Y. 2019).......................................................................12

*Creech v. P.J. Wichita, LLC*,
  No. 16-CV-311, 2017 WL 914810 (D. Kan. Mar. 8, 2017) ...................................24

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)...................................................................8

*Diamante v. Cuellar, LLC*,
Docket No. PAS-L-2165-14 (N.J. Sup. Ct. Sept. 15, 2015) ....................18

*DiGiovanni v. Saker ShopRites Inc.*,
No. A-4307-14T1, 2017 WL 2590133 (App. Div. June 14, 2017)..........18

*Dobrosmylov v. Desales Media Group, Inc.*,
532 F. Supp. 3d 54 (E.D.N.Y. 2021) ....................................................17

*Doe I v. Four Bros. Pizza*,
No. 13-CV-1505(VB), 2013 WL 6083414 (S.D.N.Y. Nov. 19, 2013)....................10

*Doe v. Blum*,
729 F.2d 186 (2d Cir. 1984).................................................................8

*Dorrity v. Wakefern Food Corp.*,
No. A-0218-18T3, 2020 WL 230021 (N.J. App. Div. Jan. 15, 2020) ............18, 19

*In re Enterprise Rent-a-Car*,
735 F. Supp. 2d 277 (W.D. Pa. 2010).....................................................23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011).............................................................................13

*Guangcheng Chen v. Matsu Fusion Rest. Inc.*,
No. 19-CV-11895(JMF), 2020 WL 6135764 (S.D.N.Y. 2020)...........................22

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014)..................................................................13

*Herman v. RSR Sec. Servs. Ltd.*,
172 F.3d 132 (2d Cir. 1999)..........................................................9, 16, 17

*Hsieh Liang Yeh v. Han Dynasty, Inc.*,
No. 18-CV-6018, 2019 WL 633355 (S.D.N.Y. Feb. 14, 2019)..............17

*Huang v. GW of Flushing I, Inc.*,
No. 17-CV-3181(PKC)(JO), 2019 WL 145528 (E.D.N.Y. Jan. 9, 2019)..............23

*Huer Huang v. Shanghai City Corp.*,
459 F. Supp. 3d 580 (S.D.N.Y. 2020)....................................................17

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013)...................................................................3

iv

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012)........................................................................................15

*Kwan v. Sahara Dreams Co. II Inc.*,
  No. 17-CV-4058(RA), 2018 WL 6655607 (S.D.N.Y. Dec. 19, 2018) ...................................20

*Lambert v. Fisherman's Dock Co-op., Inc*.,
  280 A.2d 193, 115 N.J. Super. 424 (N.J. App. Div. 1971), *mod.*, 61 N.J. 596
  (1972) .......................................................................................................................19

*Lucas v. BMS Enters., Inc.*,
  No. 3:09–CV–2159–D, 2010 WL 2671305 (N.D. Tex. July 1, 2010)...................................10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)....................................................................................................8

*Lundy v. Catholic Health Sys of Long Isl., Inc*.,
  711 F.3d 106 (2d Cir. 2013)........................................................................................21

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)........................................................................................8, 9

*Mao v. Sands Bethworks Gaming LLC*,
  No. 15-CV-6252(JMF), 2016 WL 1717220 (S.D.N.Y. 2016).................................................21

*Martinez v. Higher Powered Pizza, Inc.*,
  43 A.D.3d 670, 841 N.Y.S.2d 526 (N.Y. App. Div. 2007) .....................................................19

*Mason v. Lumber Liquidators, Inc.*,
  No. 17-CV-4780, 2019 WL 2088609 (E.D.N.Y. May 13, 2019), *aff'd*, 2019
  WL 3940846 (E.D.N.Y. Aug. 19, 2019)........................................................................14

*Mendez v Pure Foods Mgmt. Group*,
  No. 14-cv-1515, 2016 WL 183473 (D. Conn. Jan. 14, 2016) .................................................24

*Meo v. Lane Bryant, Inc.*,
  No. 18-CV-6360, 2019 WL 5157024 (E.D.N.Y. Sept. 30, 2019) ...........................................14

*Morangelli v. Chemed Corp.*,
  922 F. Supp. 2d 278 (E.D.N.Y. 2013) ............................................................................21

*Morrison v. Nat'l Austl. Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) .........................................................7

*MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*,
  442 F. Supp. 3d 738 (S.D.N.Y. 2020).............................................................................12

*Oppenheimer & Co. v. Trans Energy, Inc.*,
   946 F. Supp. 2d 343 (S.D.N.Y. 2013)....................................................................22

*Pannucci v. Village Supermarket. Inc.*,
   Docket No. ESX-L-7866-10 (N.J. Super Ct., Jan. 6, 2012)....................................18

*Parks v. Dick's Sporting Goods, Inc.*,
   No. 05-CV-6590(CJS), 2006 WL 1704477 (W.D.N.Y. June 15, 2006)..............................8, 9

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010)..........................................................................12

*Perez v. Escobar Construction*,
   540 F. Supp. 3d 395 (S.D.N.Y. 2021)............................................................13, 14

*Pettenato v. Beacon Health Options, Inc.*,
   425 F. Supp. 3d 264 (S.D.N.Y. 2019)............................................................13, 14

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994)...........................................................................11

*Rodkey v. 1-800 Flowers Team Servs. Inc*,
   2017 WL 318473 (S.D. Ohio Jan. 23, 2017) .........................................................24

*Roman v. Guapos III, Inc.*,
   970 F. Supp. 2d 407 (D. Md. 2013) ..................................................................10

*Ruixuan Cui v. E. Palace One, Inc.*,
   No. 17 Civ. 6713 (PGG), 2019 WL 4573226 (S.D.N.Y. Sept. 20, 2019) ..............................16

*Szewczyk v. United Parcel Serv., Inc.*,
   2019 WL 5423036 (E.D. Pa. Oct. 22, 2019)...........................................................14

*Tasini v. N.Y. Times Co.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002)..................................................................7

*Tese-Milner v. DeBeers Centenary A.G.*,
   613 F. Supp. 2d 404 (S.D.N.Y. 2009)..................................................................24

*Vallone v. CJS Solutions Grp. LLC*,
   9 F.4th 861 (8th Cir. 2021) ..........................................................................14

*Warth v. Seldin*,
   422 U.S. 490 (1975)....................................................................................8

*Weiss v. Starr Rest. Org., LP*,
   20-CV-8090(JMF), 2021 WL 3099895 (S.D.N.Y. July 21, 2021).......................16, 17, 20, 22

vi

*White v. Classic Dining Acquisition Corp.*,
   No. 11-cv-712, 2012 WL 1252589 (S.D. Ind. Apr. 13, 2012)................................10

*Wolman v. Cath. Health Sys.*,
   853 F. Supp. 2d 290 (E.D.N.Y. 2012), *aff'd in part & rev'd in part on other
   grounds*, 711 F.3d 106 (2d Cir. 2013) ...............................................................21

*Zheng v. Liberty Apparel Co. Inc.*,
   355 F.3d 61 (2d Cir. 2003)....................................................................................17

**Statutes and Other Authorities**

Fair Labor Standards Act ............................................................................... *passim*

Fed. R. Civ. P. 12(b)(1)........................................................................1, 7, 11, 24

Fed. R. Civ. P. 12(b)(2)......................................................................1, 11, 16, 24

Fed. R. Civ. P. 12(b)(6)........................................................................1, 3, 15, 24

Fed. R. Civ. P. 23 .......................................................................................................9

N.Y. C.P.L.R. § 302..................................................................................................12

New York Labor Law ..................................................................................... *passim*

## I.   <u>PRELIMINARY STATEMENT</u>

Plaintiff Yoe Rodriguez-Mendez ("Plaintiff") brings this putative class and collective action asserting wage and hour claims under the federal Fair Labor Standards Act ("FLSA") and state wage-and-hour laws in New York, New Jersey, Pennsylvania, Connecticut, Delaware, and Maryland. Plaintiff seeks to represent supermarket employees who worked not only for his own employer, Defendant Village Super Market, Inc. ("Village"), but also employees who worked for approximately 50 separate, independent supermarket companies, many of whom do not even conduct business in New York. Compounding the impropriety, Plaintiff has not named any of these separate, independent companies as defendants, and there are no plaintiffs joined who worked for any of these separate, independent companies.

Plaintiff's blunderbuss Amended Complaint is clearly improper. Defendants Wakefern Food Corp. ("Wakefern") and ShopRite Supermarkets, Inc. ("SRS") (collectively for purposes of this motion, the "Wakefern Defendants") respectfully move to dismiss Plaintiff's Amended Complaint under Rules 12(b)(1), 12(b)(2), and 12(b)(6). Specifically, as set forth within:

(1)    Plaintiff worked exclusively for Village, and he therefore lacks standing to bring individual or class claims against other entities by whom he was never employed. Accordingly, the Court must dismiss all FLSA and state law claims against entities other than Village, Plaintiff's only employer, including all claims against the Wakefern Defendants.

(2)    Plaintiff resided and worked exclusively in New York, and he therefore lacks standing to bring individual or class claims pursuant to New Jersey, Pennsylvania, Connecticut, Delaware, or Maryland law. Accordingly, the Court must dismiss all asserted state law claims other than those arising under New York law.

(3)    Even assuming Plaintiff could obtain relief against unnamed "John Doe" defendants (which he cannot do), the Court cannot exercise personal jurisdiction over FLSA claims

by out-of-state plaintiffs against out-of-state defendants. Accordingly, for this additional reason, the Court must dismiss all FLSA claims asserted on behalf of potential out-of-state employees against potential out-of-state employers.

(4)     The Court should reject Plaintiff's attempts to avoid the foregoing pleading deficiencies by alleging that Wakefern, SRS, Village, and the approximately 50 other independent supermarket companies in his proposed class "operated as a single integrated enterprise." This allegation fails because Plaintiff has not alleged facts to plausibly suggest that the Wakefern Defendants and these independent companies are part of a "single integrated enterprise." This failure is not surprising as other courts have repeatedly rejected this type argument against Wakefern as explained below. Moreover, even if Plaintiff could somehow allege such facts (which he cannot), he is still obligated to join appropriate plaintiffs and defendants over whom the Court can exercise jurisdiction.

The Wakefern Defendants thus respectfully request that the Court enter an appropriate Order: (1) dismissing Plaintiff's Amended Complaint against the Wakefern Defendants; (2) striking any purported class or collective claim that cannot stand as a matter of law; and/or (3) granting such additional relief as the Court deems appropriate.

## II.     STATEMENT OF FACTS[1]

### A.     The Wakefern  Cooperative

1.     Defendant Wakefern is a member-owned supermarket cooperative with its principal place of business located at 5000 Riverside Drive, Keasbey, New Jersey. (Amended Compl., D.E. 55, ¶ 12 (hereinafter, "AC"); Declaration of Lisa Vincelli, ¶ 2, attached to AC as Ex.

---

[1] All facts based solely on Plaintiff's Amended Complaint are assumed true for purposes of this Rule 12(b) motion only.

D (hereafter, "Vincelli Dec.")).[2]

2.      Wakefern's members (each a "Member" and collectively the "Members") independently own and operate more than 300 supermarkets in multiple states doing business under various banners, including ShopRite, Price Rite, Fairway Markets, Gourmet Garage, and Fresh Grocer. (AC ¶7; Vincelli Dec. ¶ 4).

3.      Wakefern's primary function is to support its Members by making large-scale purchases of food and other merchandise; storing the merchandise in its warehouses; and transporting the merchandise to its Members' stores. (Vincelli Dec. ¶ 5).

4.      Defendant Village Super Market Inc. and its affiliated entities, including various entities named as defendants herein (collectively, "Village"), is one of the Members that collectively own Wakefern. Village's principal place of business is located at 733 Mountain Ave., Springfield, New Jersey. (Vincelli Dec. ¶ 3).

5.      Village owns and operates approximately 30 supermarkets doing business under various banners in New York, New Jersey, Maryland, and Pennsylvania. (AC ¶¶ 8-10, 14-15).

6.      Defendant SRS is a wholly-owned subsidiary of Wakefern. SRS owns and operates supermarkets doing business under the ShopRite banner in New York. (AC ¶ 11).[3]

7.      Wakefern, SRS, and Village are the only actual corporate entities named as defendants in this action, although Plaintiff's Amended Complaint also fictitiously names "John

---

[2] Plaintiff attached and relies upon the Declaration of Lisa Vincelli, among other items, as exhibits to his Amended Complaint. Accordingly, the Court may consider these records in connection with Wakefern's Motion to Dismiss under Rule 12(b)(6). *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

[3] SRS is not a Member of Wakefern, but rather as noted is a wholly-owned subsidiary of Wakefern, and like the Members is supported by Wakefern's buying, warehousing, and distribution operations.

Doe Corporations 1-350," who Plaintiff describes as "Members of Defendant Wakefern and also individual supermarkets located throughout the States of, Connecticut, Delaware, Maryland, New Jersey, New York and Pennsylvania." (AC ¶ 16).

8.     Many of the Member companies that Plaintiff fictitiously and improperly names as "John Doe" defendants are located outside of New York, do not conduct business in New York, and do not employ any individuals in New York. Indeed, by Plaintiff's own recognition, certain of the employees whom he seeks to include in the putative class worked outside of New York. (AC ¶¶ 2, 4, 22, 23, 25, 45, 48, 89-123).

**B.     Wakefern's Payroll Services**

9.     In addition to its primary buying, warehousing, and distribution services, Wakefern provides various ancillary services to its Members, including payroll services to those Members who request it. (Vincelli Dec. ¶ 6).

10.     Wakefern's payroll function is elaborate and complex because its Members operate in multiple states with different wage-and-hour laws, and because the vast majority of the Members' employees are union-represented and work under different collective bargaining agreements with many different negotiated pay entitlements.  (Vincelli Dec. ¶ 7).

11.     Wakefern's payroll system uses various pay codes to ensure employees' wages are calculated correctly. For example, there are unique pay codes for different premium pay entitlements (such as shift differential pay, Sunday premium pay, and holiday premium pay), and for different overtime entitlements (such as overtime after 8 hours of work per day), most of which are dictated by the various collective bargaining agreements between the Members and their employees. There are multiple different pay codes programmed into the payroll system to capture these and other pay entitlements. (Vincelli Dec. ¶ 8).

**C.     Wakefern Discovered Inadvertent Payroll Errors**

4

12.     In or about January 2020, Wakefern discovered pay code programming errors that caused certain premium pay entitlements to be excluded from some employees' regular rate of pay for purposes of calculating their overtime wages. These errors resulted in an inadvertent and unintended underpayment of overtime wages in certain weeks. (Vincelli Dec. ¶ 9).

13.     After conducting a root cause investigation, Wakefern reprogrammed the pay codes to correct the errors and commenced the process of calculating the back wages due to current and former employees so that a voluntary correction of the inadvertent underpayment of wages could be made. (Vincelli Dec. ¶¶ 10-11).

14.     In September 2021, back-pay checks were issued to current employees impacted by the underpayment. Wakefern utilized an identity and address verification process with respect to former employees, and, in December 2021, back-pay checks were issued to former employees impacted by an underpayment of at least $5. (Vincelli Dec. ¶¶ 12-15).

**D.      Plaintiff's Employment With Village**

15.     From September 25, 2019 through June 1, 2021, Plaintiff Yoe Rodriguez-Mendez was employed by Village as a meat department clerk at a ShopRite supermarket owned and operated by Village in the Bronx, New York. (AC ¶ 32).

16.     Plaintiff does not allege (nor can he allege) that he ever worked for a Member company other than Village.

17.     Plaintiff does not allege (nor can he allege) that he ever worked for the Wakefern Defendants. In fact, Plaintiff implicitly recognizes that he did not work for the Wakefern Defendants insofar as he recognizes that the Members (like Village), not Wakefern, operate the supermarkets (like the Village-operated supermarket at which Plaintiff worked).  (AC ¶ 7).

18.     Plaintiff does not allege (nor can he allege) that he ever worked in a state other than New York.

E.      **Plaintiff's Individual Allegations**

19.      Plaintiff was impacted by the pay code error described above and received a letter informing him that he was due back pay of $5.22. (Vincelli Dec. ¶ 16; AC ¶ 60). Although Plaintiff was offered full back pay for the underpayment caused by the pay code error described above, Plaintiff apparently alleges that he is owed additional damages as a result of this pay code error. (AC ¶¶ 33-54).

20.      Plaintiff also alleges that he was impacted by another, different pay code error. Plaintiff alleges that some of his overtime hours were only paid at a straight time rate, or only at a premium rate of an extra $1 per hour, rather than a rate of time and one-half his regular rate. Plaintiff alleges that, by virtue of this error, he was underpaid by at least $2,299.62. (AC ¶¶ 55-60).

21.      On his own behalf, Plaintiff asserts claims for underpayment of overtime wages under the FLSA and the New York Labor Law (the "NYLL"). (AC ¶¶ 1-4).

F.      **Plaintiff's Class Allegations**

22.      Plaintiff also seeks relief on behalf of others.

23.      First, Plaintiff seeks to represent a class of employees who worked *for Village* in each of the four states where Village owns and operates supermarkets, *i.e.*, New York, New Jersey, Maryland, and Pennsylvania. On behalf of this purported class, Plaintiff asserts claims for underpayment of overtime wages under the FLSA, the NYLL, and state wage and hour laws in New Jersey, Maryland, and Pennsylvania. (AC ¶¶ 1-4, 8-10, 14-15).

24.      Second, Plaintiff seeks to represent a class of employees who worked *for the other approximately 50 Member companies* in each of the six states where those other Member companies own and operate supermarkets, *i.e.*, New York, New Jersey, Maryland, Pennsylvania, Connecticut, and Delaware. On behalf of this purported class, Plaintiff asserts claims for

underpayment of overtime wages under the FLSA, the NYLL, and state wage-and-hour laws in New Jersey, Maryland, Pennsylvania, Connecticut, and Delaware.  (AC ¶¶ 1-4, 16, 22).

25.     Plaintiff has not named as a defendant any Member company other than Village.

26.     Plaintiff has not joined as a plaintiff any employee who worked for Village in any state.

27.     Plaintiff has not joined as a plaintiff any employee who worked for any other Member company in any state.

### III.     PROCEDURAL HISTORY

Plaintiff filed his original Complaint on October 22, 2021, [D.E. 1], and filed an Amended Complaint by right on January 19, 2022. [D.E. 55]. The Wakefern Defendants now move to dismiss all claims against the Wakefern Defendants in the Amended Complaint for the reasons set forth within.

### IV.     LEGAL ARGUMENTS

#### POINT I
#### The Court Must Dismiss All Claims That Plaintiff Lacks Standing to Bring

First, and fundamentally, the Court must dismiss Plaintiff's FLSA and state law claims against the Wakefern Defendants under Rule 12(b)(1) as Plaintiff lacks standing to bring those claims. *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 354-55 (S.D.N.Y. 2002) ("An objection to standing is properly made on a Rule 12(b)(1) motion"). In resolving the Wakefern Defendants' motion under Rule 12(b)(1), the Court may consider evidence outside of the Amended Complaint to determine whether Plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

A.   **Plaintiff Lacks Standing to Bring Individual or Class State Law Claims Against Any Defendants, Including the Wakefern Defendants, Pursuant to New Jersey, Pennsylvania, Connecticut, Delaware, and Maryland Law**

Plaintiff, the sole named plaintiff in this proposed class and collective action, worked exclusively for Defendant Village in New York. Yet, the Amended Complaint purports to assert wage-and-hour claims under New York, New Jersey, Pennsylvania, Connecticut, Delaware, and Maryland state laws. Plaintiff does not have standing to assert individual or class claims arising under the laws of states where he was never employed, and thus the Court must dismiss all state law claims other than those arising under New York law.

"In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To meet the Article III standing requirement, a plaintiff must have suffered an "injury in fact" that is "distinct and palpable"; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, (1992); *Warth*, 422 U.S. at 501. Moreover, "[t]he filing of suit as a class action does not relax this jurisdictional requirement." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006).

In a proposed class action, the plaintiff bears the burden to demonstrate standing to pursue the claims alleged in the complaint. *Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590(CJS), 2006 WL 1704477, at *2 (W.D.N.Y. June 15, 2006) (citing *Doe v. Blum*, 729 F.2d 186, 190 n.4 (2d Cir. 1984)) ("The class action allegation adds nothing to the standing inquiry since the *named plaintiffs* must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (emphasis in original). Article III does not permit suits against non-injurious

defendants, even in the context of a class action. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("*[W]ith respect to each asserted claim,* a plaintiff must always have suffered a distinct and palpable injury to herself.") (emphasis in original, citation omitted).

In *Parks*, the plaintiff, who worked in New York, filed a proposed class action under the FLSA, the NYLL, and the laws of various other states in which defendant did business. *Parks*, 2006 WL 1704477, at *1-2. In granting defendant's partial motion for judgment on the pleadings for lack of standing, the Court held that the plaintiff "lack[ed] standing to assert state-law claims arising under the laws of states other than New York, since he was never employed by defendant anywhere other than New York." *Id.*, at *2.  Here too, Plaintiff could not have suffered an injury in fact under the law of any state where he did not work, and thus he has no standing to assert those claims. Accordingly, the Court must dismiss all state law claims other than those claims arising under New York law.

**B.      Plaintiff Lacks Standing to Bring Individual or Class FLSA or State Law Claims Against Companies By Whom He Was Not Employed, Including the Wakefern Defendants**

Plaintiff was employed by defendant Village, yet his Amended Complaint purports to assert FLSA and state law claims against all of the approximately 50 other Member companies and Wakefern and SRS, (AC ¶ 16), none of whom were his employer. Because Plaintiff did not have an employer-employee relationship with any of these companies, he lacks standing to assert either individual or class wage and hour claims against them. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("To be held liable under the FLSA, a person must be an 'employer.'"); *Mahon*, 683 F.3d at 64-65 (plaintiff failed to explain why her "injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties. . . . [W]hether or not Rule 23 would permit a plaintiff to represent a class against non-injurious defendants cannot

affect the plaintiff's Article III standing to sue the non-injurious defendants. A federal rule cannot alter a constitutional requirement"); *Bojaj v. Moro Food Corp.*, No. 13-CV-9202, 2014 WL 6055771, at *4 (S.D.N.Y. Nov. 13, 2014) ("[I]f plaintiffs do not allege that Five Amigos employed them, they lack standing to maintain a claim against Five Amigos."); *Doe I v. Four Bros. Pizza*, No. 13-CV-1505(VB), 2013 WL 6083414, at *5 (S.D.N.Y. Nov. 19, 2013) (citing *White v. Classic Dining Acquisition Corp.*, No. 11-cv-712, 2012 WL 1252589, at *2 (S.D. Ind. Apr. 13, 2012)) ("[T]he wording of [Section 216(b)] makes it clear that standing to pursue an action for employer liability is limited to employees only. . . . In other words, liability under the FLSA is predicated upon an employer-employee relationship."); *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 412 (D. Md. 2013) (dismissing FLSA and state law claims against defendants who did not employ plaintiffs due to lack of standing).[4]

Nor can Plaintiff bring suit against other entities and Members based on the potential composition of a future collective. Even assuming Plaintiff hopes to join as plaintiffs others who worked for non-Village entities, this *hope* does not satisfy the requirement that Plaintiff must *currently* demonstrate standing to pursue the claims asserted in the Amended Complaint. Plaintiff cannot use putative or theoretical plaintiffs to assert claims against other entities under the prediction that a future collective of uncertain composition might include employees of these other entities. *Roman*, 970 F. Supp. 2d at 416 (citing *Lucas v. BMS Enters., Inc.*, No. 3:09–CV–2159–D, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010) (in FLSA case, "[P]laintiffs allege standing to sue the . . . defendants on the basis that members of the putative class were employed by those

---

[4] As outlined *infra,* to the extent Plaintiff attempts to avoid standing requirements by relying on a single employer or joint employer theory, his argument fails. *See* Point III, *infra*.

defendants, and accordingly suffered the same injury as did plaintiffs. That basis is inadequate to allege standing")).

In sum, Plaintiff does not have standing (1) to assert state law claims against any entity under the laws of states where he did not work or (2) to assert FLSA or state law claims against any entity by whom he was not employed. Accordingly, all FLSA and state law claims against entities other than Village must be dismissed for lack of standing under Rule 12(b)(1), including all claims against the Wakefern Defendants. The *only* claims Plaintiff can potentially pursue are claims against Village, and *only* under the FLSA and New York state law.[5]

<u>**POINT II**</u>
**The Court Does Not Possess Personal Jurisdiction**
<u>**Over FLSA Claims by Out-of-State Plaintiffs Against Out-of-State Defendants**</u>

Under Rule 12(b)(2), Plaintiff bears the burden of showing that the Court has personal jurisdiction over each defendant. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). Here, Plaintiff purports to seek relief against all of the approximately 50 Members of the Wakefern cooperative, yet he has not named any Member as a defendant other than his former employer, Village. As a threshold matter, Plaintiff of course cannot seek relief against entities not named as defendants. But even assuming Plaintiff had properly named other Members as defendants, and even if he could overcome the standing deficiencies described above (*see supra* Point I), Plaintiff's Amended Complaint must be partially dismissed to the extent Plaintiff seeks to represent employees who worked for Member companies over whom this Court lacks personal jurisdiction.

More specifically, the Court is barred from exercising personal jurisdiction over FLSA

---

[5] The Wakefern Defendants do not suggest or admit that Plaintiff's claims against Village have any merit.

claims by putative out-of-state plaintiffs (*i.e.*, employees who did not work in New York) against out-of-state defendants (*i.e.*, Members that do not operate in New York). As such, *even if* Plaintiff had properly joined other plaintiffs, and *even if* he properly named other Member companies as defendants, this Court could *only* exercise jurisdiction over the FLSA claims of employees who either: (1) worked in New York for a Member company; or (2) worked out-of-state for a Member company that is subject to general jurisdiction in New York. Therefore, all FLSA claims asserted on behalf of out-of-state employees against out-of-state employers must be dismissed due to lack of personal jurisdiction.[6]

## A.    The Personal Jurisdiction Standard Under the FLSA

"To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff 'must make a prima facie showing that jurisdiction exists. Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010)). Plaintiff must offer evidence that is fact-specific and non-conclusory. *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 290 (S.D.N.Y. 2019).

The Court's personal jurisdiction analysis has two interrelated steps. First, Plaintiff must establish a statutory basis for jurisdiction, such as under New York's long-arm statute. N.Y. C.P.L.R. § 302.[7] Second, Plaintiff must also establish that the Court's exercise of personal

---

[6] As discussed *infra*, Plaintiff has not named any such out-of-state Members as defendants, but has indicated his intent to do so by naming "John Doe Corporations 1-350," which includes out-of-state Member companies. *Infra* § II, ¶¶ 7-8.

[7] Under  New York's long arm statute, a court may only exercise personal jurisdiction over a non-domiciliary that: (1) transacts business in New York; (2) commits a tortious act in New York; (3) commits a tortious act outside of New York that causes injury within New York; or (4) owns, uses,

jurisdiction over out-of-state defendants comports with due process. *Charles Schwab*, 883 F.3d at 82. New York courts merge the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether haling out-of-state defendants into a New York court is proper, based upon a defendant's purposeful availment of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-19 (2011); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007); *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019). Whether analyzed under New York's long arm statute or due process concepts, "in order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State." *Pettenato*, 425 F. Supp. 3d at 274 (citations omitted).

In *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S.Ct. 1773 (2017), the Supreme Court addressed when courts may exercise specific jurisdiction over mass tort class claims of out-of-state plaintiffs against out-of-state defendants. In answering this question, the Supreme Court held that, "[i]n order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*,'" and that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 137 S.Ct. at 1780 (citations omitted). Accordingly, the Court held that the state court could not exercise personal jurisdiction over the claims of out-of-state plaintiffs against the out-of-state corporate defendant. *Id.* at 1782.

---

or possesses real property in New York. N.Y. C.P.L.R. § 302(a); *MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 755 (S.D.N.Y. 2020).

This Court has extended *Bristol-Meyers* to bar FLSA claims on behalf of out-of-state plaintiffs against out-of-state defendants. *See, e.g.*, *Perez v. Escobar Construction*, 540 F. Supp. 3d 395 (S.D.N.Y. 2021); *Pettenato*, 425 F. Supp. 3d at 275-80. In *Pettenato*, Judge Moses conducted an extensive analysis of how courts have applied *Bristol-Meyers* to FLSA claims on behalf of out-of-state plaintiffs,[8] and agreed that "in light of *Bristol-Myers*, the FLSA claims 'of potential opt-in out-of-state employees do not provide the court with a basis to exercise personal jurisdiction' over an out-of-state defendant 'as to such claims.'" *Id.* at 277 (citations omitted). Rather, "plaintiffs wishing to take advantage of the collective action procedures of the FLSA must sue their employers either where specific jurisdiction can be obtained or where that employer is at home." *Id.* at 280; *see also Perez Perez*, 540 F. Supp. 3d at 408 ("Where defendants are not subject to general jurisdiction in the forum state, the Due Process clause does not permit a collective action that includes employees who did not work in the forum state."); *accord Canady v. Anthem Cos.*, 9 F.4th 392 (6th Cir. 2021); *Vallone v. CJS Solutions Grp. LLC*, 9 F.4th 861 (8th Cir. 2021); *Szewczyk v. United Parcel Serv., Inc.*, 2019 WL 5423036, at *8 (E.D. Pa. Oct. 22, 2019). This Court should reach the same conclusion.

**B.     The Court Must Dismiss All FLSA Claims on Behalf of Out-of-State Plaintiffs Against Out-of-State "John Doe" Defendants**

As the above cases make clear, "this Court may not exercise specific personal jurisdiction over the FLSA claims of out-of-state plaintiffs against [defendants who are not] subject to general

---

[8] Judge Moses noted that "[a] handful of courts around the country" – including in the Eastern District of New York – have declined to extend *Bristol-Meyers* to FLSA collective actions. *Pettenato*, 425 F. Supp. 3d at 276 (citing *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019), *aff'd*, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019); *Meo v. Lane Bryant, Inc.*, No. 18-CV-6360, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019)). Judge Moses rejected this approach and followed the majority line of cases extending *Bristol-Meyers* to FLSA claims. *Pettenato*, 425 F. Supp. 3d at 276-79 (collecting and analyzing cases).

personal jurisdiction in New York." *Pettenato*, 425 F. Supp. 3d at 270. In contravention of this constitutional limitation, Plaintiff's Amended Complaint purports to assert FLSA claims on behalf of putative out-of-state plaintiffs (*i.e.*, employees who did not work in New York) against defendants who are not subject to general jurisdiction in New York. Although Plaintiff's Amended Complaint does not name any out-of-state Members as defendants, he signals an intent to do so, as his Amended Complaint fictitiously names "John Doe Corporations 1-350," who Plaintiff describes as each of the approximately 50 Members of the Wakefern cooperative. (AC ¶ 16). By Plaintiff's own recognition, many of these Member companies are located outside of New York, do not conduct business in New York, and do not employ any individuals in New York. In short, these foreign Member companies are not subject to general or specific jurisdiction in New York. Indeed, Plaintiff's Amended Complaint fails to invoke—let alone properly assert—any statutory basis for personal jurisdiction over any of these out-of-state "John Doe" defendants. (*Id.* ¶¶ 3-4.)

In sum, Plaintiff is constitutionally prohibited from pursuing FLSA claims on behalf of out-of-state plaintiffs against any out-of-state Member companies. Accordingly, the Court must dismiss all such claims based on lack of personal jurisdiction.

### POINT III
### Plaintiff's Single Enterprise/Joint Employer Allegations Do Not Cure His Failure to Name Proper Plaintiffs and Defendants

Under Rule 12(b)(6), the Court must accept all factual allegations in the Amended Complaint as true and draw all reasonable inferences in Plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Rule 12(b)(6) standard requires that the Amended Complaint contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" meaning "factual content that allows

15

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Id.* (citing *Twombly*, 550 U.S. at 556, 570). More specifically, Plaintiff must allege sufficient facts
to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If Plaintiff has
not "nudged [his] claims across the line from conceivable to plausible, [the claims] must be
dismissed." *Twombly*, 550 U.S. at 570.

Here, Plaintiff seemingly attempts to avoid his obligation to establish standing (*see supra*
Point I), and to circumvent the Court's lack of personal jurisdiction over many Member companies
(*see supra* Point II), by alleging that: "All the Members' Supermarkets are operated as a single
integrated enterprise, under the common control of the Defendant Wakefern." (AC ¶ 7).[9]
Plaintiff's stratagem fails for several reasons. First, Plaintiff has not alleged facts to plausibly
suggest that Wakefern and its Members are joint employers or part of a "single integrated
enterprise." Second, even if Plaintiff could allege such facts, he is still obligated name appropriate
plaintiffs and defendants to pursue the broad-based class and collective allegations set forth in the
Amended Complaint, which he cannot do.

A.      **Plaintiff's Amended Complaint Does Not Allege Facts to Plausibly Suggest that
        Wakefern and its Members are Either "Joint Employers" or a "Single Integrated
        Enterprise"**

Only an "employer" can be liable under the FLSA or the NYLL. *Ruixuan Cui v. E. Palace
One, Inc.*, No. 17 Civ. 6713 (PGG), 2019 WL 4573226, at *6 (S.D.N.Y. Sept. 20, 2019) (citing
*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). When a "joint employer"

---

[9]      Moreover, to the extent that Plaintiff seeks to establish personal jurisdiction over any
purported "John Doe" company through a purported single enterprise or joint employer theory, the
Court should also employ a Rule 12(b)(2) analysis requiring Plaintiff to meet his burden beyond
the face of the pleading. *Supra* Point II. Under either a Rule 12(b)(2) or 12(b)(6) standard of
review, Plaintiff has failed to plead facts to plausibly support a single enterprise or joint employer
theory,  and therefore cannot save any of Plaintiff's claims from dismissal.

relationship is alleged, courts apply a four-part "economic reality" test, which looks whether the putative joint employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Weiss v. Starr Rest. Org., LP,* 20-CV-8090(JMF), 2021 WL 3099895, at *2 (S.D.N.Y. July 21, 2021) (citing *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66-67 (2d Cir. 2003); *Herman*, 172 F.3d at 139)). "The overarching concern is whether the alleged employer possessed the power to control the workers in question." *Weiss*, 2021 WL 3099895, at *2 (citing *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 695 (2003)); *see also Weiss*, 2021 WL 3099895, at *3 (quoting *Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18-CV-6018, 2019 WL 633355, at *8 (S.D.N.Y. Feb. 14, 2019) ("'[I]n the end,' however, 'the decisive factor as to whether a named defendant is responsible for [NYLL] violations as to a particular plaintiff turns on control, whether formal or functional.'") (citation omitted).[10]  Alternatively, "in the context of affiliated entities within a corporate family, courts in this District have sometimes applied . . . the single-integrated-enterprise test." *Weiss,* 2021 WL 3099895, at *3. This requires courts to "consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* (citing *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020)).[11] The single integrated employer doctrine "applies in extraordinary circumstances where

---

[10] Courts apply this economic realities test under both the FLSA and the NYLL. *Weiss,* 2021 WL 3099895, at *2 n3.

[11] It is an open question whether the single integrated employer doctrine is actually appropriate for FLSA and NYLL claims. *Dobrosmylov v. Desales Media Group, Inc.*, 532 F. Supp. 3d 54, 62 (E.D.N.Y. 2021) ("The Second Circuit has never endorsed this theory of liability in the FLSA context, and district courts in this Circuit are divided on its application to FLSA and NYLL cases.") (citations omitted).

plaintiff demonstrates sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Weiss*, 2021 WL 3099895, at *3 (citing *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 134 (S.D.N.Y. 2020)). Here, Plaintiff has not alleged facts to plausibly suggest that Wakefern and the Members are either joint employers or part of a single integrated enterprise.

In support of his contention that "[a]ll the Members' Supermarkets are operated as a single integrated enterprise, under the common control of the Defendant Wakefern," Plaintiff asserts that "the Supermarkets are engaged in related activities, share common ownership, and have a common business purpose." (AC ¶ 7). Plaintiff then recites various alleged details about the business relationship between Wakefern and its Member companies. (*See* AC ¶ 7(a)-(r)). Interestingly, most of these allegations are taken nearly verbatim from *Dorrity v. Wakefern Food Corp*., No. A-0218-18T3, 2020 WL 230021 (N.J. App. Div. Jan. 15, 2020), where the New Jersey Appellate Division recently held that Wakefern *was not* the joint employer of a Member company's employees, and that Wakefern *was not* liable for a Member's alleged employment law violations. *See id*., at *6-7. As the *Dorrity* court found, even accepting these allegations as true, they fail to show that Wakefern exercises the type of control over a Member's employees and operations to support a joint employer finding.[12] *Id.*

---

[12] Various other courts have likewise held that Wakefern and the Member companies, *including specifically Defendant Village*, are not joint employers. *See* Order Granting Summary Judgment to Defendant Wakefern Food Corp in *Pannucci v. Village Supermarket. Inc.*, Docket No. ESX-L-7866-10 (N.J. Sup. Ct. Jan. 6, 2012); Order Granting Summary Judgment to Defendant Wakefern Food Corp. in *Diamante v. Cuellar, LLC*, Docket No. PAS-L-2165-14 (N.J. Sup. Ct. Sept. 15, 2015) (attached herein to the Declaration of Aaron Warshaw). Also informative is *DiGiovanni v. Saker ShopRites Inc*., No. A-4307-14T1, 2017 WL 2590133 (App. Div. June 14, 2017), a case in which a plaintiff sought to hold Wakefern liable for personal injuries she suffered while working as a cashier at a ShopRite supermarket owned and operated by Member company Saker. The New

The result here can be no different. Conspicuously and fatally absent from Plaintiff's Amended Complaint are any well-pleaded allegations that Wakefern: had the power to hire, discipline and/or fire Members' employees; supervised Members' employees; assigned work to Members' employees; established the work schedules of Members' employees; approved time off requests of Members' employees; evaluated the work performance of Members' employees; established the personnel policies applicable to Members' employees; responded to Members' employees' grievances and complaints; established the pay rates or benefits of the Members' employees; maintained personnel records for Members' employees; or did anything at all indicative of a single or joint employment relationship between itself and its Member companies. Plaintiff has not asserted these actions, and, as the holding in *Dorrity* indicates, he cannot plausibly do so.

Under either a single integrated employer theory or a joint employer theory, centralized control over the conditions of employment and labor relations is the critical inquiry, *e.g.*, *Bynog*, 1 N.Y.3d at 198, and Plaintiff has not alleged (and he cannot allege) any facts to show such centralized control. Plaintiff instead merely sets forth allegations that describe some common attributes of certain cooperatives, such as shared payroll, IT, advertising, and other similar back office functions. (AC ¶7(a)-(r)). Such shared services, and the resulting economies of scale, are among the reasons why certain cooperatives exist,[13] but they do not speak to whether Wakefern

---

Jersey Appellate Division implicitly found that the plaintiff, a Member's employee, was not an employee of Wakefern because it did not dispose of the plaintiff's claim based on the New Jersey Workers' Compensation Act bar, but rather because Wakefern owed no duty to plaintiff: "Saker ShopRite was the business owner on whose premises plaintiff slipped.  Wakefern did not own the premises, have employees on the premises, invite customers to the premises, or make sales to those customers." *Id.*, at *7.

[13] *See, e.g.*, *Lambert v. Fisherman's Dock Co-op., Inc*., 115 N.J. Super. 424, 432 (N.J. App. Div. 1971) (a cooperative is "a democratic association of persons organized to furnish themselves an

possessed the power to control a Member's employees (which it does not).  Likewise, establishing

basic standards for the Members, such as food quality and sanitation, in order to protect the brand

and image of the supermarket banner, does not create the type of control needed to establish a

single or joint employer relationship. *Cf. Martinez v. Higher Powered Pizza, Inc.,* 43 A.D.3d 670,

671-672 (N.Y. App. Div. 2007) (rejecting joint employment theory in a franchise context even

though franchisor imposed and enforced standards in areas such as food quality and preparation,

hours of operation, menu items, employee uniforms, and packaging requirements, even though

franchisor the right to perform inspections, conduct audits, and observe interaction with customers,

because there was "no reservation of control over the delivery personnel of the franchisee").

To illustrate this point, this Court's holding in *Weiss* is instructive:

> Weiss points to the use of "a single 'Starr Restaurant' gift card, which is valid for
> use at all of Defendants' restaurants," and the fact that all of the restaurants "are
> advertised on the Starr Restaurant website" and use emails ending with "@starr-
> restaurants.com" as evidence of Defendant's "interrelation of operations." But "it
> is not uncommon for two or more businesses that are run independently and manage
> their labor relations independently to use a single website or a common name for
> marketing purposes. That does not make each responsible for the labor law
> violations of the other." Such evidence may establish that two or more businesses
> "share a common purpose," but it does not, without more, "establish an interrelation
> of operations or centralized control of labor relations with plaintiffs' identified
> direct corporate employer sufficient to hold one corporation liable for the [NYLL]
> violations of the other corporation."

* * *

> In any event, "[a] common benefits package speaks only to economies of scale and
> not to centralized control of labor relations" and "the fact that a subsidiary adopted
> policies promulgated by its parent is insufficient to show that the parent exercised
> centralized control over the subsidiary's employees," let alone that multiple
> subsidiaries of a single parent, the situation here, qualify as a single "employer."

> At bottom, missing from the Complaint is any allegation permitting "the inference
> that" the Other Starr Restaurants "possessed the power to control" Weiss.  Indeed,

---

economic service…a cooperative association exists primarily for the purpose of furnishing
services for its members"), *mod.*, 61 N.J. 596 (1972); 1 Fletcher Cyc. Corp. §68.10 (same).

> Weiss "entirely leaves out the relationship that [he], as employee, had to the [restaurant] locations besides the one location at which [he] actually worked." In short, his "complaint is devoid of facts suggesting any connection between him and [the Other Starr Restaurants]. . . .It supplies no basis for bringing them into this lawsuit which, at present, contains allegations of violations of law solely as to him."

*Weiss*, 2021 WL 3099895, at \*5-6 (citations omitted); *see also Kwan v. Sahara Dreams Co. II Inc.*, No. 17-CV-4058 (RA), 2018 WL 6655607, at \*3-4 (S.D.N.Y. Dec. 19, 2018) (granting motion to dismiss FLSA and NYLL claims, holding that "[t]he Amended Complaint principally relies on conclusory, boilerplate allegations of the elements of a single integrated enterprise, asserting—without any factual support—that Defendants have "a high degree of interrelated and unified operation," and share "common management, centralized control of labor relations, common ownership, common control, common website, common business purposes and interrelated business goals. . . . These allegations do not support the inference that the Corporate Defendants shared centralized control of labor relations or interrelation of operations, much less that they had any control—as a matter of economic reality—over Plaintiff"); *Mao v. Sands Bethworks Gaming LLC*, No. 15-CV-6252(JMF), 2016 WL 1717220, at \*3 (S.D.N.Y. 2016) (granting motion to dismiss where plaintiff failed to allege facts to establish control necessary for joint employer relationship under FLSA and NYLL); *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 285-286 (E.D.N.Y. 2013) (granting motion to dismiss where plaintiff failed to allege facts to establish control necessary for joint employer relationship under FLSA and NYLL); *Wolman v. Cath. Health Sys.*, 853 F. Supp. 2d 290, 297-99 (E.D.N.Y. 2012), *aff'd in part & rev'd in part on other grounds*, 711 F.3d 106 (2d Cir. 2013) (allegations that defendants were part of an integrated hospital network with shared website, system wide approach to measuring patient care, centralized system for job postings, and common automatic meal deduction policy, insufficient to establish single enterprise or joint employment).

Moreover, many of the allegations in the Amended Complaint offered in support of the overarching allegation of a single enterprise are themselves entirely conclusory.[14] For example, Plaintiff alleges that "[t]he Supermarkets share a common management team. See Exhibit C for Defendants' shared career page and common job postings." (*See* AC ¶ 7(q)). But, in fact, the attached webpage screen shots are simply job postings for openings at *individual Members'* stores (*e.g.,* Salad Bar Clerk, Bakery Manager, Scanning Clerk). (*See* AC Exhibit C, page 6 of 7). The referenced website pages say nothing about a "common management team" that jointly manages the separate Member companies, and Plaintiff provides no other factual support for his conclusory allegation. Similarly, Plaintiff conclusorily alleges that "[e]mployees are interchangeable among the Supermarkets," but Plaintiff then purports to support that allegation with examples of co-workers who were transferred from one Village-owned store to another Village-owned store. (*See* AC ¶ 7(r)). Utterly lacking are any factual allegations that employees working for one Member company were transferred to a *different* Member company. *See* Weiss, 2021 WL 3099895, at *5 (rejecting plaintiff's conclusory allegations that employees were transferred between separate entities). Also without any factual support is Plaintiff's ambiguous allegation that Wakefern "manages payroll [sic] sets policy." (AC ¶ 7(n)). To the extent Plaintiff is alleging that Wakefern establishes the Members' payroll policies (versus simply provides payroll processing services), his allegation is utterly conclusory (and false).

The inescapable conclusion is that the Amended Complaint does not contain factual allegations to plausibly support either a single employer or joint employer theory. Plaintiff has not plausibly demonstrated how Wakefern and any – let alone *all* – of the approximately 50 other

---

[14]   As the Second Circuit has repeatedly emphasized, FLSA collective actions may not rely on "allegations supply[ing] nothing but low-octane fuel for speculation." *Lundy v. Catholic Health Sys of Long Isl., Inc*., 711 F.3d 106, 115 (2d Cir. 2013).

Member companies had control over the terms and conditions of his employment at Village, an independently owned company. Nor has Plaintiff plausibly alleged facts to show interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control. His conclusory and inapt allegations are insufficient. *See Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 347 (S.D.N.Y. 2013) ("mere conclusory statements" cannot suffice to defeat a motion to dismiss); *Guangcheng Chen v. Matsu Fusion Rest. Inc.*, No. 19-CV-11895(JMF), 2020 WL 6135764, at *4 (S.D.N.Y. 2020) (conclusory joint employer allegations insufficient to defeat motion to dismiss under FLSA and NYLL); *Cho v. Osaka Zen Spa,* 19-CV-7935(ER), 2021 WL 1736813 (S.D.N.Y. 2021) (same).

**B.    Plaintiff's Single Enterprise/Joint Employer Allegations Do Not Obviate Plaintiff's Need to Name Proper Plaintiffs and Defendants**

*Even if* Plaintiff could allege facts to plausibly suggest that Wakefern and the Members were joint employers or part of a single integrated enterprise (which he cannot do), he is still legally obligated to name appropriate plaintiffs and defendants to pursue claims on behalf of employees who worked for Members other than his employer, Village.

As detailed above, Plaintiff lacks standing to assert individual or class claims against an entity by whom he was never employed and who caused him no injury. (*See* Point I, *supra*). Rather, there must be a plaintiff joined who worked for each employer entity against whom relief is sought. Plaintiff's allegation that Wakefern and the Members are joint employers or a single integrated entity does not cure Plaintiff's lack of standing to assert claims against any Member other than Village. *See Huang v. GW of Flushing I, Inc.,* No. 17-CV-3181 (PKC)(JO), 2019 WL 145528, at *6, n.7 (E.D.N.Y. Jan. 9, 2019) (noting Court's prior dismissal of plaintiff's FLSA and NYLL claims against all out-of-state defendants, and all corporate defendants who did not actually employ plaintiff, for lack of standing); *Bojaj*, 2014 WL 6055771, at *4 (noting that plaintiff's

common enterprise allegation did not cure plaintiff's lack of standing).

Likewise, Plaintiff's reliance on a single enterprise or joint employer theory does not relieve him of the burden to name defendants over whom the Court can exercise personal jurisdiction: "[T]he joint employer theory and similar concepts are relevant for determining liability, *but are not for determining whether a court may exercise personal jurisdiction over a party.*" *In re Enterprise Rent-a-Car*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010) (emphasis added); *Mendez v Pure Foods Mgmt. Group*, No. 14-cv-1515, 2016 WL 183473, at *5 (D. Conn. Jan. 14, 2016) (same); *Baughman v. KTH Parts Indus., Inc.*, No. 19-CV-8, 2020 WL 1853207, at *6 (S.D. Ohio Apr. 13, 2020) (same); *Rodkey v. 1-800 Flowers Team Servs. Inc*, 2017 WL 318473, at *3 (S.D. Ohio Jan. 23, 2017) (same); *Creech v. P.J. Wichita, LLC*, No. 16-CV-311, 2017 WL 914810 (D. Kan. Mar. 8, 2017) (same); *see also Tese-Milner v. DeBeers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) ("The Court has not encountered, and Plaintiff does not offer, any legal support for the concept that 'integrated enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law."); *Cent. States Se. & Se. Areas Pension Fun v. Reimer Express World Corp.*, 230 F.3d 934, 944-45 (7th Cir. 2000) (holding that plaintiff's argument "confuses liability and jurisdiction [because]. . . . [t]he fact that a defendant would be liable under a statue if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised").

In short, Plaintiff must still establish that personal jurisdiction exists in this Court over all parties to the alleged single enterprise/joint employer relationship. To hold otherwise would effectively abolish the due process requirement that a defendant is only subject to a court's jurisdiction if it has acted in a way that creates a connection between itself and the forum. Plaintiff's single/joint employer allegations do not obviate his fundamental pleading obligation to

name proper parties in light of the relief he seeks. As such, the Court should grant all relief requested above notwithstanding his single/joint employer allegation.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Wakefern Defendants respectfully request that the Court partially dismiss and strike from Plaintiff's Amended Complaint any purported class or collective claim that cannot stand as a matter of law under Rules 12(b)(1), (b)(2), and (b)(6), and grant such additional relief as the Court deems appropriate.

Dated: New York, New York
       February 16, 2022

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By /s Aaron Warshaw
    Aaron Warshaw
    Jamie Haar
599 Lexington Avenue, 17th Floor
New York, New York 10022
aaron.warshaw@ogletree.com
jamie.haar@ogletree.com

Mark Diana (*pro hac vice*)
10 Madison Avenue, Suite 400
Morristown, NJ 07960
mark.diana@ogletree.com

*Attorneys for Defendants*
*Wakefern Food Corp. and Shoprite*
*Supermarkets, Inc.*

25